**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| WHITFIELD FARLEY, | : Case No. 3:19-cv-178 |
| Plaintiff, | : |
| vs. | : Magistrate Judge Sharon L. Ovington |
| | : (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL | : |
| SECURITY ADMINISTRATION, | : |
| Defendant. | : |

**DECISION AND ENTRY**

## I.    Introduction

Plaintiff Whitfield Farley brings this case challenging the Social Security

Administration's denial of his application for period of disability and Disability Insurance

Benefits.  He applied for benefits on August 17, 2015, asserting that he could no longer

work a substantial paid job.  Administrative Law Judge (ALJ) Gregory G. Kenyon

concluded that he was not eligible for benefits because he was not under a "disability" as

defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 8), the

Commissioner's Memorandum in Opposition (Doc. No. 11), and the administrative

record (Doc. No. 6).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings.  The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II.    Background

Plaintiff asserts that he has been under a "disability" since April 5, 2013.  He was forty-six years old at that time and was therefore considered a "younger person" under Social Security Regulations.  *See* 20 C.F.R. § 404.1563(c).  He has a high school education.  *See id.* § 404.1564(b)(4).

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. No. 6, PageID 96-109); Plaintiff's Statement of Errors (Doc. No. 8); and the Commissioner's Memorandum in Opposition (Doc. No. 11).  Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III.    Standard of Review

The Social Security Administration provides Disability Insurance Benefits to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1).  The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope.  It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon.  42 U.S.C. § 423(d)(1)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance …." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part

*Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47

(6th Cir. 2004)).

## IV.    The ALJ's Decision

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to

Plaintiff's application for benefits.  He did so by considering each of the five sequential

steps set forth in the Social Security Regulations.  *See* 20 C.F.R. § 404.1520.  He reached

the following main conclusions:

> Step 1:    Plaintiff did not engage in substantial gainful employment during the period from his alleged onset date, April 5, 2013, through his date last insured, March 31, 2015.
>
> Step 2:    Through his date last insured, he had the severe impairments of degenerative joint disease of the right shoulder, obesity, depression, a personality disorder, and an anxiety disorder.
>
> Step 3:    Through his date last insured, he did not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.
>
> Step 4:    Through his date last insured, his residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "sedentary work … except (1) no crawling or climbing of ladders, ropes, or scaffolds; (2) occasional use of the right upper extremity for pushing and pulling; (3) no use of the right upper extremity for overhead reaching; (4) occasional use of the right upper extremity for reaching in all other directions; (5) no work around hazards such as unprotected heights or dangerous machinery; (6) limited to performing unskilled, simple, repetitive tasks; (7) occasional contact with coworkers and supervisors; (8) no public contact; (9) no fast-paced production work or strict production quotas; and (10) limited to performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next."

4

Step 4:      Through his date last insured, he was unable to perform any of his
             past relevant work.

Step 5:      Through his date last insure, he could perform a significant number of
             jobs that exist in the national economy.

(Doc. No. 6, PageID 96-109).  These main findings led the ALJ to ultimately conclude

that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 109.

## V.     Discussion

Plaintiff contends that the ALJ incorrectly created and relied on a residual

functional capacity (RFC) that produced relevant work at step five of the sequential

process.  The Commissioner maintains that substantial evidence supports the ALJ's

decision.

"RFC is the individual's *maximum* remaining ability to do sustained work

activities in an ordinary work setting on a regular and continuing basis …."  Soc. Sec. R.

96-8p, 1996 WL 374184, *2 (July 2, 1996).  The ALJ is responsible for assessing an

individual's RFC.  20 C.F.R. §§ 404.1520(a)(4); 404.1546(c).  The ALJ's RFC

assessment must be "based on all of the relevant evidence in the case record, including

information about the individual's symptoms and any 'medical source statements' -- i.e.,

opinions about what the individual can still do despite his or her impairment(s)--

submitted by an individual's treating source or other acceptable medical sources."  Soc.

Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted).

Plaintiff asserts that the ALJ erred in determining his RFC as it relates to his right

upper extremity.  According to Plaintiff, the ALJ relied on Plaintiff's testimony that he

could not lift his right arm above his head and correctly limited him to no use of his right

5

upper extremity for overhead reaching.  But Plaintiff also testified that he cannot move

his right arm behind him or across his body without pain and, yet, the ALJ mistakenly

limited him to occasional use of the right upper extremity for reaching in all directions.

Plaintiff contends that ALJ Kenyon failure to consider his complete testimony constitutes

error.

Substantial evidence supports the ALJ's assessment of Plaintiff's RFC.  The ALJ

explained the history of Plaintiff's right should injury.  He recognized that Plaintiff's

right shoulder injury began in 1992 when he was in the military.  His treatment has

included five surgeries and multiple injections.  (Doc. No. 6, PageID 103).  He also

acknowledged Plaintiff's testimony about his right shoulder:  "Movement of the affected

joint across or behind aggravates his pain. … He allegedly cannot lift weight with the

right arm above his head."  *Id.* at 102.

However, the ALJ found that Plaintiff's statements concerning the intensity,

persistence, and limiting effects of his symptoms were not entirely consistent with the

medical evidence and other evidence of record.  *Id*.  Despite Plaintiff's long history of

right shoulder problems, the ALJ found that he nonetheless has "some residual function

at the right upper extremity."  *Id*. at 103.  The ALJ pointed to physical therapy notes that

revealed Plaintiff's range of motion improved two months after his surgery in October

2014.  For instance, after the surgery, he had 40 degrees of flexion and abduction and,

within two months, progressed to 110 degrees.  In January 2015, Plaintiff's doctor

observed 4/5 strength at the right upper extremity, albeit with diffuse tenderness.  The

ALJ correctly viewed this evidence as not consistent with Plaintiff's testimony.

In addition to Plaintiff's treatment records, the ALJ reasonably relied on the record-reviewing physicians' opinions.  In October 2015, Lynne Torello, M.D., reviewed Plaintiff's records and opined he could lift and/or carry twenty pounds occasionally and ten pounds frequently.  *Id*. at 150-51.  He is limited to no overhead reaching with both his upper extremities.  Dr. Torello also found that Plaintiff is limited to occasional front and lateral reaching, pushing, and pulling with his right upper extremity.  *Id.* at 151-52.  He is limited to frequent pushing and pulling with his left upper extremity.  *Id.* at 151.  He should avoid concentrated exposure to hazards.  *Id.* at 152.  He should never climb ladders, ropes, or scaffolds.

In April 2016, Esberdado Villanueva, M.D., reviewed Plaintiff's records and generally affirmed Dr. Torello's opinions.  *Id.* at 166-68.  He added that Plaintiff can occasionally crawl and climb ramps and stairs.

ALJ Kenyon assigned Dr. Torello and Dr. Villanueva's opinions "partial weight." The ALJ rejected their opinions regarding Plaintiff's left upper extremity, concluding that the evidence did not establish a left-shoulder impairment.  *Id.* at 104.  He found that their limitation to light work seemed reasonable but because the vocational expert explained that light work would be eliminated with occasional use of right upper extremity for reaching, the ALJ restricted Plaintiff to sedentary work.  The ALJ also rejected Dr. Villanueva's opinion to limit Plaintiff to occasional climbing ramps and stairs, noting that it is not supported by the record.

However, the ALJ found that their opinions regarding Plaintiff's right upper extremity were "congruent with the previously detailed postoperative improvement." *Id.*

7

at 104; *see* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").  Accordingly, he adopted their opinions in his RFC assessment with one exception—he added greater limitations on exposure to hazards to mitigate the risk of injury to Plaintiff's right shoulder.  *Id.* at 104.

The administrative record does not contain an opinion by any of Plaintiff's treating medical sources or by an examining medical source during the period Plaintiff was insured, detailing the gravity of his right shoulder symptoms or describing the impact of his right shoulder impairments have on his functioning.  There are, however, four relevant records from providers at the Veterans Administration (VA) Medical Center.  The ALJ did not find them persuasive; indeed, he assigned all "little weight."  *Id.* at 105.

Plaintiff contends that the ALJ improperly assigned "little weight" to medical records from the VA because they were based on Plaintiff's subjective account.  (Doc. No. 8, PageID 1169).  According to Plaintiff, given that the ALJ relied on Plaintiff's subjective statements (regarding his inability to reach overhead with his right arm), the ALJ should not have discounted this VA record because it was also based on Plaintiff's subjective account.  *Id.*  Plaintiff's argument lacks merit.

The ALJ observed that in a VA compensation and pension examination from March 29, 2014, Daniel S. Willsey, PA-C, noted Plaintiff "state[d] that he cannot do his job … due to the pain in his shoulders[;] cannot lift, use the arm overhead without significant pain."  (Doc. No. 6, PageID 106) (quoting 5F, 151).  The ALJ reasonably discounted this report because its "limitations provided are wholly subjective in nature."

8

*Id.* at 105.  He explained, "The claimant's subjective belief is not particularly probative of his residual functional capacity given the previously detailed postoperative improvement and contemporaneous exam reflecting only a slight reduction is shoulder strength on the right."  *Id.* (citing 5F, 158).  An ALJ can reasonably discount medical evidence because it is based on an individual's subjective statements.  *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 391 (6th Cir. 2004) (substantial evidence supports Commissioner's decision to disregard doctor's opinion when doctor's opinion is based in part on plaintiff's own assessment of his limitations).

Plaintiff also contends that ALJ Kenyon "failed to fully consider essential vocational expert testimony that accurately portrays Mr. Farley's right shoulder pain." (Doc. No. 8, PageID 1169).  During the hearing, the ALJ posed a hypothetical to the vocational expert asking whether an individual who had no use of his dominant upper extremity could perform jobs previously identified by the expert.  The vocational expert responded that it "would eliminate all of them. … No sedentary jobs."  (Doc. No. 6, PageID 141).  According to Plaintiff, "This hypothetical accurately depicts Mr. Farley's right shoulder pain as he described in his testimony and is contained in the multiple VA records. … ALJ Kenyon erred in not including this inclusive restriction into his RFC." (Doc. No. 8, PageID 1169-70).

Although the ALJ asked about an individual who had no use of his dominant upper extremity, his decision not to include those limitations in his RFC assessment does not constitute error because the ALJ's earlier hypothetical question reflected the limitations set forth in the RFC assessment and substantial evidence supports the ALJ's

RFC assessment.  *See Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007) ("'While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.'") (quoting *Podedworny v. Harris*, 745 F.2d 210, 218 (3rd Cir. 1984)) (citing *Tennant v. Schweiker,* 682 F.2d 707, 711 (8th Cir. 1982) ("This Court has repeatedly warned that hypothetical questions posed to vocational experts ... should precisely set out the claimant's particular physical and mental impairments.")).

The court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standard and whether the ALJ's decision is supported by substantial evidence.  *Gayheart,* 710 F.3d at 374.  ALJ Kenyon reasonably evaluated the medical evidence, objective medical findings, and Plaintiff's statements and applied the correct legal standards to determine his residual functional capacity that is consistent with the evidence of record.

### IT IS THEREFORE ORDERED THAT:

1. The ALJ's non-disability decision is affirmed; and

2. The case is terminated on the Court's docket.

October 29, 2020                                             *s/Sharon L. Ovington*
                                                            Sharon L. Ovington
                                                            United States Magistrate Judge

10